UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

GERRY SMITH,

                Plaintiff,

v.

                                            4:08-cv-00122-RBS-DEM

MICHAEL J. ASTRUE, COMMISSIONER,
Social Security Administration,

                Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Gerry Smith ("plaintiff" or "Smith"), brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of the decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability insurance benefits and supplemental security income (SSI) under Title XVI of the Social Security Act. By order filed October 13, 2009, this action was referred to a United States Magistrate Judge[1] pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the final decision of the Commissioner be affirmed.

---

[1] The Order of Referral designated United States Magistrate Judge James E. Bradberry who retired effective January 31, 2010. This Report and Recommendation was prepared by Judge Bradberry's duly appointed successor, United States Magistrate Judge Douglas E. Miller, who was appointed effective February 1, 2010.

1

# I. PROCEDURAL HISTORY

Smith first injured his back in 2002, and again in 2004. He filed a protective application for disability insurance benefits and SSI under Titles II and XVI of the Social Security Act on September 22, 2004 alleging that he had been disabled since February 15, 2002, as a result of his low back injury. (R. 17, 50-52, 86)[2].      His claim was denied initially and upon reconsideration. (R. 34, 36 – 38, 39 – 41). On July 6, 2005, Smith requested a hearing before an administrative law judge (ALJ). (R. 43). On September 21, 2006, ALJ Michael J. Cummings held a hearing and on October 5, 2006 he denied the claims by written opinion. (R. 341 – 51, 14 – 26). Smith requested review by the Appeals Council and on October 14, 2008, the Appeals Council denied the request for review thus rendering the ALJ's decision the final decision of the Commissioner. (R. 5-8). Smith timely commenced this action for judicial review under 42 U.S.C. § 405(G) and 1383(c)(3).

# II. FACTS

Smith, who was 41 when the ALJ issued his opinion, resides in Newport News, Virginia. (R. 25, 50 – 52, 331 – 332). He graduated from high school and has past work experience as a maintenance

---

[2] Page citations are to the compiled Administrative Record the Commissioner previously filed.

2

worker, groundskeeper and construction worker.   (R. 25, 57 - 62, 69, 96).

In February, 2002, Smith was treated in the emergency room for low back pain.  He was diagnosed with a lumbar back strain.   (R. 140 - 142).  One week later, Smith consulted with Dr. David Belvin, for the purpose of returning to work at full duty.  He advised Dr. Belvin that he felt "completely better."  Dr. Belvin determined that Smith's back strain had resolved and on February 9, 2002, released him to return to work at full duty.  (R. 148 - 149).

Two years later, on August 22, 2004, Smith again presented at the emergency room after injuring his back lifting a three-year-old child.  He complained at that time of low back pain radiating to his left hip and thigh.  (R. 156, 181, 198).  The E.R. physician prescribed Flexeril and Vicodin and recommended follow up with an orthopaedist.  On   August 31, 2004, Smith consulted John Aldridge, M.D. an orthopaedic surgeon.  Dr. Aldridge concluded that Smith suffered from low back strain accompanied by inflammation of the sacroiliac joint.   (R. 198).   Smith saw Dr. Aldridge again on September 22, 2004.   On that date, Dr. Aldridge recommended plaintiff receive steroid injections in his low back and sacroiliac joint.  (R. 198).  Although an appointment was scheduled, Smith did not receive the steroid treatment.  (R. 197).

Smith again consulted Dr. Aldridge on November 8, 2004, complaining that his condition had worsened.   (R. 197).   Dr.

3

Aldridge referred him for an MRI, which he received on November 22, 2004. The MRI revealed moderate degenerative disc disease ("DDD"), with a protruding disc at L-4 – L-5 that appeared to impinge upon Smith's nerve at L-5. (R. 195 – 196). After reviewing the MRI with Smith at an appointment on November 30, 2004, Dr. Aldridge recommended surgery. (R. 197).

On the same day, November 30, 2004, Dr. Aldridge completed a Medical Evaluation for Virginia's Department of Social Services. (R. 170 – 171). In the Evaluation, which was based on his examination that day, Dr. Aldridge opined that Smith was unable to work for more than 90 days because of an L-4 – L-5 herniated disc. He indicated that, at that time, Smith could not lift objects weighing more than one pound, bend, stoop or reach; sit or stand for more than one hour at a time, walk more than 50 feet, climb 4 – 6 steps or drive an automobile. (R. 170 – 171).

Also on November 30, 2004, Dr. Aldridge completed a Lumbar Spine Residual Functional Capacity(RFC)Questionnaire. (R. 172 – 176). The RFC Questionnaire recites that Smith was suffering from an L-4 – L-5 herniated disc, and that he complained of pain including left leg pain, left leg weakness and insomnia. (R. 172). On the Questionnaire, Dr. Aldridge detailed Smith's then-present limitations. At the time, Dr. Aldridge recited that plaintiff had "good days" and "bad days" and expected him to be absent from work

4

more than four days per month as a result of his impairment. (R. 175).

Both the Social Services and RFC evaluations were completed November 30, 2004, after his herniated disc was diagnosed - but prior to surgery to correct the problem. (R. 170, 172). The record contains no detailed functional evaluation by Dr. Aldridge after surgery, however, several later-in-time records reflect Dr. Aldridge's observations of Smith's post-operative condition.

Smith underwent surgery for his herniated disc January 3, 2005, and was discharged from the hospital on January 5, 2005. (R. 177 - 178). Dr. Aldridge saw Smith for post surgical follow up on January 12, 2005. At that time, he was doing "ok". Dr. Aldridge's examination revealed a negative straight leg raising (SLR) test and 5/5 strength in his peroneal, quadriceps, and hamstring muscles. In addition, x-rays taken that day showed "well decompressed evidence of lamonectomy." (R. 194).

Smith next saw Dr. Aldridge on January 28, 2005. At that time, Dr. Aldridge took additional x-rays as a result of a fall Smith sustained when going to the mail box. After reviewing the x-rays, Dr. Aldridge concluded that Smith "continues to improve nicely." (R. 193).

Thereafter, Smith underwent a course of physical therapy. He participated in five sessions during which his physical therapist reported that he continued to complain of pain and perceived his

5

condition as gradually worsening. (R. 191). The physical therapy records report that Smith was "making little progress". (R. 185).

On March 1, 2005, Smith returned to Dr. Aldridge for an additional evaluation. Dr. Aldridge concluded that he was "doing alright", that he again had 5/5 muscle strength and a negative SLR test. Dr. Aldridge also noted, however, that Smith was "not feeling much better" and still reporting "significant spasm and discomfort in his low back region." (R. 193). Dr. Aldridge recommended continuing with physical therapy and a follow up in six weeks.

On March 15, 2005, Smith saw Dr. Aldridge again. On that visit Smith reported "no leg pain, . . . [but] "paraspinal muscle spasm on the left side." Dr. Aldridge indicated he did not think further surgical intervention was warranted. He suggested the possibility of pain management or a TENS unit. (R. 288).

Smith underwent a second MRI examination on April 20, 2005. (R. 291 - 292). The second MRI revealed no further disc protrusion, but did reveal evidence of scar tissue or granulation, including some scarring around the left L-5 nerve root. After reviewing the second MRI, Dr. Aldridge referred Smith for pain management and a second opinion. The Second opinion physician, Dr. Cohen, concluded that, although Smith had residual problems, Cohen did not think he would benefit from further surgery. (R. 285). Dr. Aldridge's physical exam on July 22, 2005 found "focal pain in the back where the scar is to touch", but also noted that Smith was

6

"nontender over the SI joints and [had] normal sensation and function distally." Dr. Aldridge concluded that he "didn't know what we really have to offer him except to continue with pain management."

Between April 19, 2005 and August 4, 2005, Smith consulted with Dr. Tushar Gajjar for pain management. (R. 316 - 325). On his initial examination Dr. Gajjar noted that Smith moved slowly with an antalgic gate but was able to move about without the use of a cane he brought to the appointment. Smith's lumbar spine was normally aligned, he complained of tenderness to palpation over his paraspinous musculature greater on the left side but there was no tenderness over his sacroiliac joints or the muscles in his lower extremities. He was able to flex his lumbar spine forward to the point that his fingertips were just past his knees. His SLR tests were negative on the right side but positive on the left side. His motor strength was 5/5 in his lower extremities, but he demonstrated give-way weakness related to pain in his left quadriceps and left iliopsoas muscles. Dr. Gajjar concluded that Smith suffered from post-lamonectomy pain syndrome. He recommended a combination of injections and medication. (R. 324 - 325).

For a short time the injections, which Smith received on May 6, 2005 and June 24, 2005, provided relief for Smith's back pain. (R. 318 - 322). However, Smith's complaints of pain returned and based upon the lack of sustained benefit, Dr. Gajjar discontinued

the injections and recommended Smith follow up with his primary care physician or another pain management specialist for medical management of his symptoms. (R. 316 – 317).

During the time he was consulting with Dr. Gajjar, Smith also saw Dr. Carolina Longa who performed an assessment of Smith's RFC for the State Agency on May 6, 2005. Dr. Longa completed a Physical Residual Functional Capacity (RFC) Assessment form, the first completed following his January 3, 2005 surgery. Dr. Longa stated at that time that Smith retained RFC to perform light work that involved lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking or sitting about six hours out of each eight hour work day; unlimited pushing and/or pulling; frequent balancing and kneeling; occasional climbing, stooping, crouching, and crawling; but no concentrated exposure to hazards such as machinery or heights. (R. 200 – 202).

Smith returned to Dr. Aldridge on September 13, 2005. At that time Dr. Aldridge reported that his physical exam was unchanged. He suggested that Smith have a discogram as a result of his continuing complaints of low back pain. (R. 285). Both the discogram and a post-discogram CT scan were administered October 20, 2005. This test revealed left sided laminotomy, likely epidural fibrosis, and a left paracentral full thickness central annular tear to a broad small protrusion, which correlated with Smith's previous MRI reports. (R. 294).

8

Smith also reported pain at the L-5 S-1 area and the discogram test revealed "only very mild degenerative changes at this level with slight peripheral extension of contrast only into the middle third annular fibers and no full thickness tear." The test also revealed a slight disc bulge at L-5 S-1. (R. 294).

Following this test, Smith returned to see Dr. Aldridge on November 1, 2005. Dr. Aldridge reviewed the discogram and noted the findings at L-4 - L-5 and L-5 - S-1. However, a further evaluation by a neurosurgeon, Dr. Chang, again found surgery was not warranted. At that time, Smith decided to seek a third opinion from Dr. Paul Savas as to whether he should undergo surgery. (R. 285). The record contains no report from Dr. Savas, and a post-hearing letter from Dr. Aldridge suggests Savas did not evaluate Smith.

From April 23, 2006 to July 18, 2006, Smith consulted with a second pain management specialist, Dr. Lynn Dahl, D.O. During his initial visit with Dr. Dahl, she reported that he "appeared well developed and in no acute distress." Smith was able to walk with a "moderately antalgic" gate. She reported his muscle strength and lower extremities as 5/5 and his muscle mass and tone normal. She noted that deep tendon reflexes and sensory exams were intact, but that Smith complained of pain when the area over his surgical scar was "deeply palpated". He exhibited decreased range of motion in all planes due to pain. Dr. Dahl also reviewed Smith's most recent

MRI and noted multi-level degenerative changes and "mild" disc bulging. She recommended changing Smith's medications and later prescribed a TENS unit. (R. 234 – 240).

In June, 2006, Smith presented to Dr. Daniel Cavasos, M.D. for new complaints related to his left shoulder. Dr. Cavasos referred Smith for an MRI which revealed a rotator cuff tear. (R. 284, 241 – 242). Dr. Cavasos repaired Smith's left rotator cuff tear on July 28, 2006. (R. 252 – 253). Following the surgery on his shoulder, Smith denied having any numbness or tingling in his upper extremities, and reported to Dr. Cavasos that he was doing well and felt he was making progress in physical therapy. Dr. Cavasos' examination of him following shoulder surgery indicated he was "neurovascularly intact", and "having less pain and slowly improving his range of motion." (R. 282).

The July 2006 visits to Dr. Dahl and the post-surgical follow-up with Dr. Cavasos in August 2006 were the most recent medical records submitted during the September 21, 2006 hearing before the ALJ. Relying principally on the objective findings reported by Dr. Dahl, Dr. Gajjar, post-surgical follow-up notes of Dr. Aldridge, and the RFC evaluation by Dr. Longa, the ALJ concluded that Smith had the RFC to perform jobs that exist in significant numbers in the national economy, and was therefore not disabled. (R. 25).

10

## III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether such decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).[3] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig,

---

[3]"The issue . . . therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)).

11

76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. <u>Perales</u>, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To be eligible for SSI under Title XVI of the Social Security Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. § 1382(a) and 42 U.S.C. § 1382(b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. § 1381(a) and 42 U.S.C. § 1382(c).

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity[4] by reason of any medically determinable physical or mental impairment[5]

---

[4]"Substantial gainful activity" is work that: (1) involves doing significant and productive physical or mental duties; and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510 and 416.910. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. <u>Id.</u> at § 404.1572.

[5]"Physical or mental impairment" is defined in § 223(d)(3) of the Social Security Act as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

12

> which can be expected to result in death or
> which has lasted or can be expected to last
> for a continuous period of not less than 12
> months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment"[6] which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20

---

[6]The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c) and 416.920(c).

C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A. ALJ's Decision

In the present case, the ALJ made the following findings under the five-part analysis: (1) Smith has not engaged in substantial gainful activity since February 15, 2002; (2) Smith has severe impairments, namely status post-laminectomy, discectomy and foraminotomy at L-4 – L-5 due to degenerative disc disease; (3) Smith's impairments (or combination of impairments) did not meet one of the listed impairments in Appendix 1; (4) although Smith could not perform all of his past work, Smith has Residual Functional

14

Capacity (RFC) to perform a full range of light work including sedentary work; and (5) there are jobs that exist in significant numbers in the national economy that Smith can perform. (R. 20-25).

In his motion for summary judgment, Smith alleges generally that the ALJ's decision is not supported by substantial evidence, and also alleges the following specific errors: (1) The Appeals Council failed to address additional evidence presented after the hearing; (2) the ALJ failed to develop the factual record either by failing to contact Dr. Aldridge to obtain an updated report – or by failing to order a consultative exam; (3) the ALJ erroneously assessed Smith's RFC and (4) the ALJ erred in finding Smith's subjective complaints of pain inconsistent with the medical record. The Court will review each argument in turn.

1.  **The ALJ's finding that Smith retained Residual Functional Capacity (RFC) to perform a full range of light work is supported by substantial evidence.**

Although Smith argues generally that the ALJ's decision was not supported by substantial evidence, his brief fails to address or contradict the ALJ's citation to medical evidence from Smith's treating providers, including Dr. Dahl, Dr. Gajjar, and Dr. Aldridge, which support his finding. Instead, Smith primarily complains that the ALJ improperly disregarded Dr. Aldridge's 2004 RFC assessment in determining whether Smith was disabled. That

assessment, prepared approximately six weeks prior to the surgical repair of Smith's herniated disc, imposed significant limitations on Smith's ability to work and concluded that those limitations would likely last more than 90 days. According to Smith, "At no time did Dr. Aldridge ever alter these limitations." Thus, he contends it was error for the ALJ to reject them. (Plaintiff's Mem. P. 16).

The ALJ's opinion carefully explained the reasons why he did not credit Dr. Aldridge's 2004 RFC assessment. After that report was completed, Smith underwent back surgery which significantly improved his symptoms, according to the objective findings of all of his treating physicians. The ALJ's determination that Smith's condition improved is supported by substantial evidence. On January 12, 2005, just one week after surgery, Dr. Aldridge's physical exam showed 5/5 muscle strength in Smith's lower extremities, and x-rays revealed "well decompressed evidence of laminectomy" On January 28, 2005, Dr. Aldridge again noted that Smith "continues to improve nicely". Thereafter, Dr. Aldridge continued to follow Smith, who was primarily treated by pain management specialists, including Dr. Gajjar and Dr. Dahl. These physicians uniformly found Smith's objective condition to be a marked improvement from Dr. Aldridge's pre-surgical assessment.

Dr. Dahl's notes from July 2006 reflect Smith was able to walk normally, had normal muscle mass and tone, and was in no acute

16

distress. (R. 235). At his initial visit with Dr. Gajjar on April 19, 2005, he appeared to be in "mild distress", was able to move about the room slowly without the cane he brought to the appointment, his spine was normally aligned, he had no tenderness over his SI joint, and he could flex his spine to the point his fingertips were just past his knees. (R. 324).

This evidence was sufficient to support the ALJ's finding that Smith's condition had improved significantly since Dr. Aldridge's pre-surgical evaluation. Moreover, the ALJ did not selectively evaluate evidence of Smith's pre-surgical condition. Instead, he correctly focused on objective findings made by Smith's treating physicians after his surgery. In fact, on October 26, 2004, a month prior to Dr. Aldridge's contested RFC assessment, Smith was examined by Robert F. Castle, M.D., a medical consultant retained by the State Agency. (R. 163 – 169). That evaluation, prepared in connection with Smith's initial application for benefits, found Smith could occasionally lift 50 pounds and frequently lift 25 pounds. Dr. Castle also found he could stand or walk six hours out of an eight hour day, and frequently climb, balance, kneel or crawl. These pre-surgical observations are consistent with the ALJ's determination that Smith was not disabled, but they form no part of his opinion because – like Dr. Aldridge's 2004 assessment – the ALJ determined more recent medical records were more reliable

17

evidence of the extent of any work related debility resulting from his back injury and disc repair.

The ALJ properly considered all of the medical evidence, and assigned appropriate weight to the opinions of Smith's treating physicians. See Gordon v. Schwelker, 725 F. 2d 231, 235 - 36 (4th Cir. 1984). That evidence was sufficient to support the ALJ's determination that Smith retained RFC sufficient to perform the full range of light work and jobs existing in substantial numbers in the national economy.

## 2. The Appeals Council properly considered evidence submitted after the hearing.

Smith's next argument relates to additional evidence submitted after the hearing but prior to the Appeals Council decision. The new evidence consisted of a letter prepared by Dr. Aldridge and a disability evaluation prepared by Dr. Hamid, both of which address the extent of Smith's alleged disability.

The Appeals Council considered both reports, as expressly stated in its opinion (R. 5, 8), and found the evidence did not provide a basis for changing the ALJ's decision (R. 5). Contrary to Smith's argument, the Appeals Council's failure to articulate each reason why the post-hearing evidence was insufficient does not require a remand.

Some Circuits explicitly hold that the Appeals Council is not required to provide detailed analysis of its conclusion on post-

hearing evidence. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992); Damato v. Sullivan, 945 F. 2d 982, 988 (7th Cir. 1991). The Fourth Circuit in an unpublished opinion also appeared to adopt this view. See Hollar v. Commissioner, 1999 WL 753999 at *1 (4th Cir. 1999) (unpublished) (citing Browning in ruling Appeals Council not required to articulate its particular evaluation of new evidence).

However, in another unpublished opinion the Fourth Circuit directed remand, in part based on an "ambiguity in the record" related to the Appeals Council's failure to explain its findings with regard to additional evidence. Thomas v. Commissioner of Social Security, 24 Fed. Appx. 158, 2001 WL 1602103 (4th Cir. 2001) (unpublished). In that case, the court could not determine whether the Council understood that the new records were from a treating physician – a fact which was important to the ALJ's analysis of disability. Considering the Fourth Circuit guidance in both cases, this court does not find the Council's failure to explain the insufficiency of this additional evidence mandates remand. See King v. Barnhart, 415 F. Supp. 2d. 607, 610-612 (E.D. N.C. 2005).

The Council received the evidence as part of the Administrative Record, and this Court must therefore consider the new evidence in evaluating the ALJ's decision. Wilkens v. Senetary Health and Human Services, 953 F.2d 93, 96 (4th Cir. 1991) (en banc.). The first document was a letter dated July 23, 2007

19

prepared by Dr. Aldridge, Smith's primary orthopaedist and the physician who performed his laminectomy. (R. 333). Importantly, the letter does not describe any new examination or treatment of Smith but merely provided a "review of services" all of which had been described in detail in records which were explicitly addressed by the ALJ. While Smith claims the letter establishes his permanent disability, Dr. Aldridge did not use that language. In the letter, Dr. Aldridge concurred with a statement by a referral provider, Dr. Chang, who had opined that Smith would not benefit from surgery, and that his "disability and condition would be permanent." Dr. Aldridge noted his agreement with Dr. Chang's position "that this is a permanent condition for Mr. Smith." (R. 333).

It is interesting that Dr. Aldridge used the word "condition", and not "disability" in conveying his agreement, but the semantics are not material to the impact of this new evidence. The ALJ expressly found that Smith had a permanent condition, and that his condition limited his ability to work. Dr. Aldridge's letter is entirely consistent with that finding, and thus provides no "new and material evidence" to refute the Commissioner's decision.

Smith also submitted a form Medical Evaluation completed by Dr. Khalid Hamid, and based on Dr. Hamid's examination of Smith

which occurred on September 7, 2005[7]. (R. 340). This one-page document describes Smith as "permanently disabled" and suggests he will "never" reach maximum medical improvement. The form purports to totally restrict Smith's ability to work, as Dr. Hamid answers a question concerning the impact of medications on his employment by writing the phrase "no employment" in the space for an answer.

Even if the report is construed as Dr. Hamid's opinion that Smith was totally disabled, it would not alter the Court's view of the Commissioner's decision. Importantly, the report contains no objective medical findings to support its conclusion.[8] Moreover, it predates, by more than six months, the detailed observations made by Dr. Dahl, another of Smith's treating physicians, in July through August of 2006. The ALJ relied on Dr. Dahl's objective findings as set out in his written opinion. After treatment with Dr. Dahl on July 8, 2006, she noted that Smith walked with a normal gate, had normal muscle mass and tone, was neurologically intact, alert oriented and appropriate, and in no acute distress. (R. 235). Given the record evidence of Dr. Dahl's detailed

---

[7] A second exhibit purporting to be from Dr. Hamid` bears an illegible signature, though "Dr. Hamid" is printed in different handwriting at the top of the page (R. 336). Like the September report, this document contains no objective findings, and merely attributes Smith's complaints to "chronic low back pain".

[8] Neither party cited to objective findings made by Dr. Hamid. The court cannot discern whether any such findings are documented in the record. There are ten pages of notes which appear to be from Dr. Hamid (R. 219 - 229) but they are barely legible. Most of the documents from this office which relate to Smith's complaints of back pain specifically state that the examining physician performed no physical examination on that date. (R. 225, 226, 228).

21

observations some nine months _after_ Dr. Hamid's examination report, the Appeals Council correctly determined that this "new evidence" was not material, and insufficient to reverse or remand the ALJ's decision.

## 3. The ALJ did not neglect his obligation to develop the record.

Smith next claims the ALJ's failure to develop the record requires remand. He has complained that the ALJ should have more carefully examined him during the hearing concerning his treatment, recontacted his medical providers - including Dr. Aldridge, and obtained a consultative exam. The court does not find the ALJ breached any duty to develop the record for Smith, who was represented by counsel throughout the proceedings.

Generally, "the ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ may develop the record by questioning witnesses, requesting evidence, and subpoenaing witnesses. 20 C.F.R. §§ 404.944, 404.950(d), 416.1444, 416.1450(d). It is, however, the plaintiff's burden to present evidence of disability, Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981), and the plaintiff bears the risk of non-persuasion, Seacrist v. Weinberger, 538 F.2d 1054, 1057 (4th Cir. 1976). "[T]he ALJ is not required to function as the claimant's substitute counsel, but only

22

to develop a reasonably complete record." <u>Clark v. Shalala</u>, 28 F.3d 828, 830-31 (8th Cir. 1994). Though "the ALJ bears some responsibility for development of the record, at the same time the ALJ is entitled to assume that a claimant represented by counsel is making his strongest case for benefits." <u>Nicholson v. Astrue</u>, 341 F. App'x. 248, 253 (7th Cir. 2009)(internal citations and quotations omitted).

The Fourth Circuit has held that a case should be remanded for failure to develop the administrative record "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, *and* such failure is prejudicial to the claimant . . ." <u>Marsh v. Harris</u>, 632 F.2d 296, 300 (4th Cir. 1980)(emphasis added). "Prejudice can be established by showing that additional evidence would have been produced . . . and that the additional evidence might have led to a different decision." <u>Ripely v. Chater</u>, 67 F.3d 552, 557 n. 22 (5th Cir. 1995).

Here, Smith was represented by counsel who had been engaged more than a year prior to the hearing. (R. 42). His counsel had ample time to question Smith and to introduce any evidence necessary to support his claimed disability. More important - the record as presented was more than sufficient for the ALJ to render a decision. It included over 200 pages of medical records from at least five different treating providers.

23

Smith also argues that the ALJ failed to develop the administrative record because he did not recontact Dr. Aldridge. See 20 C.F.R. §§ 404.1512(e) (When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled).

Smith argues that the ALJ should have recontacted Dr. Aldridge because Aldridge's only functional evaluation occurred prior to his surgery and was therefore, rejected by the ALJ. This claim ignores the extensive documentation from Dr. Aldridge's post-surgical treatment of Smith already in the record. In fact, the ALJ discounted Dr. Aldridge's RFC because the observations contained in it were inconsistent with his objective post-surgical findings. (R. 285 - 286). This record, and the extensive history from other providers, including specifically Dr. Dahl and Dr. Gajjar, were adequate to support the Commissioner's determination and the ALJ was therefore not required to recontact Dr. Aldridge. Moreover, the post-hearing evidence submitted from Dr. Aldridge did not materially differ from the other evidence upon which the ALJ relied. Thus, Smith has not even suggested how additional evidence from Dr. Aldridge would have altered the ALJ's findings.

Smith also argues that the ALJ had a duty to arrange for a consultative examination. A consultative examination is required when the needed information "is not readily available from the records of [the claimant's] medical treatment source, or [the

Commissioner is] unable to seek clarification from [the claimant's] medical source." 20 C.F.R. §§ 404.1512(f) and 416.912(f).

"[T]he decision to order a consultative examination is committed to the discretion of the ALJ, and where the record as a whole provides sufficient, unambiguous, and non-conflicting evidence to support the ALJ's decision, a consultative examination is not required." Keplinaer v. Astrue, No. 5:07cv099, 2008 WL 4790663, at *5 (W.D. Va. Nov. 3, 2008).

The ALJ had ample evidence to determine Smith's claim without requiring a consultative exam. Although Smith's brief argues that the record contained no reports from treating physicians after October 2005, this is not true. Even a cursory review of the file and the ALJ's opinion demonstrates that Smith submitted extensive evidence from treating providers Dr. Dahl, Dr. Gajjar, and Dr. Cavasos which encompassed nearly all of 2006. The last in time records from Dr. Dahl and Dr. Cavasos reflected evaluation and treatment which occurred just weeks prior to the hearing. Under these circumstances the ALJ was not required to procure a consultative exam.

## 4. The ALJ properly assessed Smith's Residual Functional Capacity.

The ALJ has the responsibility of determining RFC. 20 C.F.R. § 416.946. In making this determination, the ALJ must consider the objective medical evidence in the record, including the medical

25

opinions of the treating physicians and the non-examining medical consultants. In deciding the weight to assign to any medical opinion, the ALJ must consider the following factors: (1) "[l]ength of treatment relationship;" (2) "[n]ature and extent of treatment relationship;" (3) degree of "supporting explanations for their opinions;" (4) consistency with the record; and (5) the specialization of the physician. Id. at § 416.927(d)(2)-(6).

Here, Smith claims the ALJ "mischaracterized pertinent evidence", and improperly rejected Dr. Aldridge's pre-surgical assessment of Smith's limitations. As previously discussed, Dr. Aldridge's notes and the objective findings contained in the medical records after Smith's laminectomy, fully support the ALJ's disregard of the 2004 functional assessment. Smith underwent at least two later evaluations by both Dr. Gajjar and Dr. Dahl and had several post-surgical visits with Dr. Aldridge, all of which demonstrated the benefits he received from the surgical procedure. In addition, the State Agency's assessment of RFC was performed by Dr. Longa on May 6, 2005, four months after Smith's surgery. Given this evidence, the fact that Dr. Aldridge never performed a second assessment does not, as Smith argues, require a finding that Smith remained disabled by the herniated disc Aldridge repaired in 2005.

While Smith correctly points out that Dr. Dahl's records admit of some ambiguity concerning her use of expressions such as "failed multiple meds" and "meds have not helped", these statements are

26

entirely consistent with the objective findings when viewed in light of the ALJ's conclusion that Smith's subjective complaints of pain were not consistent with the objective medical evidence including the functional evaluations and observations of his condition by Dr. Gajjar and Dr. Dahl. While Dr. Dahl's records in July 2006 reflect Smith's ability to ambulate normally, with normal muscle mass and tone, she was unable to address his subjective complaints of pain. In short, as the ALJ found, his doctors "appear to be without answer to his degree of alleged pain."

As additional support for the ALJ's findings that Smith's back condition did not amount to work precluding disability, the Court notes that Smith's failure to work long predated the onset of his August, 2004 back injury and later disc surgery. The record contains no medical evidence from the period of time between February 9, 2002, and August, 2004. The February 9, 2002 record reflects Smith's statement to his treating physician that he felt "completely better" following a minor back strain. He sought out his doctor's permission to return to "full duty" which he received on that date. Thereafter, the record contains no medical evidence until August 22, 2004, when Smith again presented at the Emergency Room for complaints of low back pain. (R. 156). During this nearly three-year interval, Smith reported total earnings of just over $6,000.00, (2002 - $3,679.80; 2003 - $1,064.01; 2004 - $1,424.43) (R. 56). Because there is absolutely no medical

evidence to support any claim of work-related disability during this period, the ALJ correctly found this earnings history was more consistent with his determination that Smith's inability to work was caused by something other than his claim of work precluding debility.

## 5. The ALJ properly evaluated Smith's statements concerning the subjective pain he felt.

In making the determination as to whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 416.929(a). A claimant's subjective statements about pain or other symptoms alone are not enough to establish disability. Id. Under both federal regulations and Fourth Circuit precedent, the determination of whether a person is disabled by pain or other symptoms is a two-step process. First, the claimant must satisfy a threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. 20 C.F.R. § 416.929(b); Craig, 76 F.3d at 594 and 595. "However, while a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'" Craig, 76 F.3d at 592-93 (quoting Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986)).

After the claimant has satisfied the first step, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and the extent to which they affect the claimant's ability to work. 20 C.F.R. § 416.929(c)(1). In making this evaluation, the ALJ must consider "all the available evidence," including: (1) the claimant's history, including the claimant's own statements, id.; (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," id. at § 416.929(c)(2); and (3) other evidence submitted by the claimant relevant to the severity of the impairment such as evidence of daily activities, medical treatments and medications, and descriptions of the pain or other symptoms, id. at § 416.929(c)(3).

In the present case, the ALJ followed the two-step inquiry set forth in the regulations and adopted by the Fourth Circuit. As to the first step, the ALJ found that Smith's "medically determinable impairment could reasonably be expected to produce of the alleged symptoms." (R. 24). In other words, Smith satisfied his threshold obligation under the two-part inquiry.

With regard to the second step, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are only partially credible and any credible aspect of his testimony does not equate to a finding

29

of disability." (R. 24). In making this determination, the ALJ considered all of the available evidence. He noted that "the medical examinations are within normal limits with no objective or diagnostic evidence of significant limitations or debilitating side effects." (R. 24). The ALJ found that the record did not support pain and limitations of work-disabling proportions. The Court finds that the ALJ complied with both the regulations and Fourth Circuit precedent in evaluating claimant's pain, and supported his decision with substantial evidence.

To the extent Smith contends that the ALJ erred in evaluating his credibility, the Court must give great deference to the ALJ's credibility determinations. Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). The Court must accept the ALJ's factual findings and credibility determinations unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)). Here, the ALJ performed the required analysis and articulated a sound basis for not fully crediting claimant's statements. There are no exceptional circumstances which would warrant disregarding the ALJ's credibility

determination. Accordingly, the Court finds the ALJ properly evaluated claimant's credibility.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be affirmed.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474

U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

April 30, 2010

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Scott Bertram Elkind
Elkind & Shea
801 Roeder Road, Suite 550
Silver Spring, MD 20910

Joel Eric Wilson
United States Attorney Office
101 W. Main Street, Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By _____
Deputy Clerk

4/30_____, 2010